# SUPREME JUDICIAL COURT

AT THE

NOVEMBER SESSION, 1867, IN BOSTON.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN,　⎫
Hon. DWIGHT FOSTER,　⎬ Justices.
Hon. JOHN WELLS,　⎭

---

## COMMONWEALTH *vs.* CITY OF BOSTON.

Under the Gen. Sts. *c.* 64, §§ 2, 3, the right to erect telegraph posts in a highway, under the direction or authority of the mayor and aldermen or selectmen of the city or town, is given only to electric telegraph companies incorporated under the laws of the Commonwealth.

Specifications and decisions by the mayor and aldermen or selectmen of a city or town through which the lines of an electric telegraph company pass, made and recorded in conformity with the Gen. Sts. *c.* 64, § 3, determining the kind and location of the posts of the company in a highway, are conclusive upon the rightfulness of their erection, so that they cannot lawfully be removed by the city or town, or any other of its officers, or treated in any manner as a public nuisance.

INDICTMENT for suffering Broad Street in Boston to be obstructed by wooden posts, it being a highway which the city was bound to keep in repair. Trial, in the superior court, before *Morton,* J., who after a verdict of guilty, made a report

of the case for determination by this court, the material part of which is as follows :

" The posts referred to are telegraph posts, and render the way inconvenient for travellers. They were erected and maintained by the Insulated Lines Telegraph Company, a corporation established by the laws of New York and engaged in the business of telegraphing for the public by electricity. The mayor and aldermen of Boston gave this company a writing specifying where in the highway described the posts might be located, the kind of posts, and the height at which and the places where the wires might run. The posts were placed in conformity with this specification, and are, and ever have been, where they were originally put; and the foregoing specifications were duly recorded in the records of said city of Boston."

*H. W. Paine*, for the Commonwealth.

*J. P. Healy & C. H. Hill*, for the defendants.

HOAR, J. The sixty-fourth chapter of the General Statutes defines the powers, privileges, duties, restrictions and liabilities of companies incorporated for the transmission of intelligence by electricity. The second section of that chapter authorizes " each company " to construct lines of electric telegraph upon and along the highways and public roads and across any waters within the state, by the erection of the posts and other fixtures necessary to sustain the wires of its lines, under the provisions of the following section ; but forbids the company to incommode the public use of highways, or public roads, or to endanger or interrupt the navigation of any waters. The third section provides that the mayor and aldermen or selectmen of any place through which the lines of a company are to pass shall give the company a writing specifying where the posts may be located, the kind of posts, the height of wires, &c., and may afterwards, upon notice and hearing, direct any alterations ; and that such specifications and decisions shall be recorded in the records of the city or town.

The first question which arises upon the report is, whether the determination of the mayor and aldermen of the places in which the poles of telegraph companies may stand, is to be

regarded as conclusive upon the rightfulness of their erection within the limits of a highway, so that they cannot lawfully be removed by the city or any other of its officers, or treated in any manner as a public nuisance. The chief doubt upon this question arises from the eleventh section, which provides that " when an injury is done to a person, or to property, by the posts, wires, or other apparatus of a telegraph line, the company shall be responsible in damages to the party injured. If the same are erected on a highway or townway, the city or town shall not, by reason of anything contained in this chapter or done thereunder, be discharged from its liability, but all damages and costs recovered against a city or town on account of such injury, shall be reimbursed by the company owning the posts, wires or other apparatus." It is a very peculiar provision, and contrary to the general rules of law applicable to the subject, if a city or town is held liable in damages for the unsafe condition of a road which it has no power to prevent or remedy. But on the other hand, although the direction is express that no poles or other structures shall be erected in such a manner as to incommode the use of public ways, it is still to be considered by whom the fact of their incommoding the public is to be determined. And it seems impossible to conclude that the legislature, when they gave to a board of public officers the power and duty to direct the places in highways which should be occupied by telegraph poles, and required that their orders should be placed on record, could have intended to leave the existence and continuance of the poles at the places designated to the revision and control of a highway surveyor, or to the discretion of any jury before whom the question might come upon an indictment or action. If the direction of the mayor and aldermen is not conclusive, then any individual finding himself incommoded in travelling, to any degree, might lawfully remove the poles. It has been recently held in England that the erection of telegraph poles in a highway, though with the consent of the parish, is a nuisance. *Regina* v. *United Kingdom Electric Telegraph Co.* 9 Cox Crim. Cas. 174. And it is not according to the usual policy of the law to commit to one tribunal in advance the de-

cision of a simple question of fact, and leave it just as much open to controversy afterwards. The injunction not to incommode the public may still have its force as directory of the action of the mayor and aldermen or selectmen, and as furnishing a ground of application to them for any changes which experience may show to be necessary. We therefore think that the recorded location for the poles of a telegraph company must be held conclusive, so far as the right to remove them, or liability to indictment for not removing them, is concerned. The Commonwealth has committed the rights of the public in this behalf to the exclusive cognizance and protection of the public officers having jurisdiction of the subject.

Whether the eleventh section is to be construed as giving or preserving a right of action, where the injury is caused by the mere placing of the poles at the places appointed for them, may perhaps admit of doubt. The liability of the poles to decay and fall, or to lean over, and of the wires to become displaced, would give the provision effect, if the right of the original location of them were regarded as unquestionable. But if the fullest force is given to the language of the section, it would not require us to hold that the original setting of the poles in the highway. is an indictable nuisance. In *Young* v. *Yarmouth*, 9 Gray, 386, it was expressly decided, under the St. of 1849, *c.* 93, that the license from the selectmen was a complete justification for placing telegraph poles in a highway, and that an action could not be maintained against the town for an injury occasioned to a traveller by them.

The other question presented by the report is one of even greater difficulty; and a careful study of the whole chapter hardly satisfies us that we can ascertain with certainty the intent of the legislature concerning it.

The telegraph poles which the jury have found were a nuisance and obstruction in the highway, were placed there by a telegraph company incorporated under the laws of New York. They had leave to place them where they did from the mayor and aldermen of Boston, and the specification in writing which gave the permission was duly recorded in the city records.

When the sixty-fourth chapter of the General Statutes speaks of " companies incorporated for the transmission of intelligence by electricity," it would seem, according to the ordinary rules of construction, to refer only to corporations established under the laws of this Commonwealth. But the thirteenth section provides that " owners and associations engaged in the business of telegraphing for the. public by electricity, although not incorporated, shall be subject to the liabilities and governed by the provisions of this chapter in the same manner as corporations." The foreign corporation is certainly an " owner engaged in the business of telegraphing for the public ; " and it has accordingly been held that the rules laid down in the statute for regulating the transmission of messages apply to such a corporation. *Ellis* v. *American Telegraph Co.* 13 Allen, 226. It is, however, obvious that all the provisions of the chapter cannot apply to a private person or association who may own a telegraph line. Such private owner has no capital stock ; no directors, president, clerk or treasurer, whose duties the statute prescribes, and whose liability it creates. The section must therefore be construed as imposing liabilities and establishing provisions for government only so far as the same are applicable. Whether the phrase " shall be governed by the provisions of this chapter," was intended to include the enjoyment of all the privileges which the chapter confers on corporations chartered in this Commonwealth, is a question upon which we have entertained great doubt. It is only by the first section of the chapter that powers and privileges are in express terms conferred, and by that only upon " companies incorporated for the transmission of intelligence by electricity." But when we examine the earlier statutes of 1849 and 1851, of which the Gen. Sts. *c.* 64, are merely a revision, and without intimation by the commissioners of an intention to effect any change in the law, we find it impossible, upon any just principles of construction, to hold that the privilege of erecting telegraph poles upon and along the public ways has been conferred upon any others than the companies chartered for the purpose within the Commonwealth. The first section of the St. of 1849, *c.* 93, is as follows : " Every

company, for the transmission of intelligence by electricity which now is or may be incorporated, and every owner, or association, engaged in telegraphing for the public, by electricity, in this state, shall be subject to the liabilities and governed by the provisions contained in this act." The second section commences : " Any company incorporated for the purpose may construct lines of electric telegraphs, upon and along any of the highways and public roads," &c. The third section provides that " the selectmen of any town, or mayor and aldermen of any city, through which the lines of such company are to pass, shall give said company their writing, specifying where the posts may be located," &c. ; " and such company in building its line shall follow the regulations," &c. The fourth and fifth sections contain a full and minute provision for the appraisement and assessment of damages sustained by " any person owning land or tenements near to or adjoining a highway or road, along which said lines shall be constructed by any incorporated company." The sixth section, which regulates the transmission of despatches by telegraph, returns to the language of the first section, and provides that " every such company, and every owner or association, engaged in telegraphing for the public, by electricity, in this state, shall receive despatches," &c., " and for every wilful neglect so to do, the company, owner or association, as the case may be, shall be liable to a penalty," &c. The seventh section imposes a penalty for the unlawful and intentional injury of the property " of such company, owner or association." The ninth section gives to telegraphic corporations all the powers and privileges, and subjects them to all the duties, restrictions and liabilities, set forth in the forty-fourth chapter of the Revised Statutes. This last section can of course only apply to telegraphic corporations created by the state ; and in all the other sections it is apparent that the change of phraseology is carefully and intentionally made ; and that, while the regulations which the public interest requires are applied to the business of telegraphing, by whomsoever carried on, and penalties are provided for its unlawful disturbance, the privilege of occupying the public ways, under the direction of the public authorities, is

*ex industriâ* conferred only on the companies which the legislature has incorporated, and of which it has the control, established by law for the purpose. The St. of 1851, *c.* 247, which among other things regulates the organization of telegraphic companies, and prescribes the returns which they shall annually make, shows with equal clearness that by such are intended only those which are created by and wholly subject to our laws. Both of these statutes are embodied, with slight and unimportant change of phraseology, in the sixty-fourth chapter of the General Statutes.

Upon any other construction than the one which we adopt, it would follow that, while the legislature was carefully guarding the responsibility of the corporations which it authorized by law and limited the sphere of their operations, and made it the duty of the town and city officers to designate the places where they might place poles in the highway, any other person or voluntary association, however irresponsible, might engage as advantageously in the same business, and have an equal right to the exclusive occupation of the public right. This would be an anomaly in legislation which neither the language, nor the apparent purpose and object of the statutes, would seem to countenance.

There is in the St. of 1859, *c.* 260, an expression which might be taken to imply that the legislature of that year supposed that others than incorporated companies might erect telegraph poles in the public ways. The first section provides that towns shall be liable for injuries to persons or property occasioned by telegraph posts or other fixtures in the highways, although they have been placed under the authority of the selectmen. The second section is as follows : " The companies or persons erecting such telegraphic posts or fixtures, or to whom they may belong, shall be held to reimburse and repay to said town the full amount of damages and costs recovered as aforesaid by any party injured." In the corresponding section in the Gen. Sts. *c.* 64, § 11, only the company owning the telegraphic line is mentioned. We do not think, on the whole, that it greatly affects the question of construction ; and, at any rate, cannot give it

sufficient weight to control the considerations which lead to a
different conclusion.

On the ground, therefore, that in the case at bar the telegraph
poles which created a nuisance in the highway, being erected
by an association not incorporated in this Commonwealth, were
not lawfully placed therein, it was the duty of the city of Boston
to make the way safe and convenient by removing them, and
the conviction at the trial was right.

If, as was suggested at the argument, the general understand-
ing of the law, as shown by a very general and almost universal
practice, is different from our interpretation of it, the legislature
can easily furnish a remedy, by making any change in the
statutes which it may deem that justice or the public con-
venience may require.                    *Judgment on the verdict.*