ALICE S. CAMPBELL *vs.* GERTRUDE S. HAGEN-BURGER.

Norfolk. November 10, 1950. — March 7, 1951.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Negligence,* Faucet, Hot water, Contributory.

One scalded by a sudden and forcible spurt of very hot water from a piece of hose which she was using in drawing water from a defective faucet could not hold the owner of the premises liable where the evidence, if it showed negligence on the part of the owner toward the injured person with respect to the faucet or the water, equally showed that the injured person, knowing at least as much about them as did the owner, was negligent in using them.

TORT. Writ in the Superior Court dated August 5, 1947. The action was tried before *Beaudreau,* J.

*R. S. Bowers,* (*R. I. Moses* with him,) for the plaintiff.

*M. J. Dray,* for the defendant.

QUA, C.J. This is an action by the wife of a tenant against the owner of an apartment house in Brookline for personal injuries sustained by the plaintiff on February 25, 1947, as the result of being scalded by hot water while she was using a faucet in the janitor's sink in the basement for the purpose of drawing water to rinse a tub after washing her clothes.

After a verdict for the plaintiff the judge entered a verdict for the defendant on leave reserved. It does not appear that the plaintiff saved any exception to this action of the judge (*Looby* v. *Looby,* 303 Mass. 391, 392), but since the result will be the same, we will consider the case as if the plaintiff's rights had been duly saved. The plaintiff did except to several rulings upon evidence, but in the view we take these have become immaterial and will not be further noticed.

The plaintiff and her husband occupied an apartment in the basement. The plaintiff's husband was the defendant's janitor for the building. The sink was located in the furnace room in a part of the basement remaining in the control of

the defendant and outside of the apartment occupied by the plaintiff. There was also in the furnace room a small stove for heating the water. The plaintiff used her own washing machine. She drew water from the sink through two pieces of garden hose, each about five feet nine inches long, which her husband screwed to the hot and cold water faucets in the sink. She rinsed her clothes in an old bath tub which her husband had placed near at hand. We assume in favor of the plaintiff that there was sufficient evidence to warrant findings that she was authorized and invited to use the janitor's sink in the manner described as a right or privilege appurtenant to the tenement which she occupied; that the defendant owed to the plaintiff a duty of care with reference to the sink and its appliances; that the defendant is chargeable with any knowledge or negligence of her janitor, the plaintiff's husband; that the plaintiff is not chargeable with any negligence of her husband (*Pittsley* v. *David*, 298 Mass. 552, 553, *Zwick* v. *Goldberg*, 304 Mass. 66, 71–72); and that the hose, which was attached solely for the plaintiff's convenience, was not in itself a cause but was merely an attendant condition of the accident.

Upon these assumptions the issues which emerge are whether the defendant could be found liable to the plaintiff for negligence in respect to the condition of the hot water faucet or because of excessive heat of the water or on both grounds.

The plaintiff's testimony, by which she is bound, was in substance that she had been washing for about an hour and twenty minutes, had finished her washing, and was rinsing out the rinsing tub with the hose from the hot water faucet in the sink; that she turned the faucet on about one quarter way, and the water was running out very feebly; that about ten seconds later "all of a sudden something happened in the faucet"; that she "heard a noise in the faucet"; that as a result the hose "suddenly turned around or something" and hit her, and scalding water with steam coming from it struck her body; that when the sudden force of water came "the hose jumped in some way" and poured water out over

her arm, side, and chest; that she had used the faucet about once a week since 1943; that on the day of the accident the faucet was leaking very badly, and for a number of weeks "they always had to put a cloth over it" because very hot water would bubble up; that when she wanted to turn it on she put a cloth on it so as not to burn herself; that her husband "told the plumber several times and they never could fix it"; that "they either did not have a faucet or had to get an order, and the plumber didn't come; that her husband put washers on the faucet every little while"; that "she went right on using it week after week"; that she knew the water was very hot; that the hose "jumped right out of her hand"; that "the force of the water came on without her touching it"; and that nothing like that had happened before.

The plaintiff's husband testified that the faucet dripped from the bottom; that on the day of the accident it leaked badly from the top "where you turn it on"; that it dripped at the bottom and leaked at the top three months before the accident; that he put a rag over the top to keep the water from scalding his hands; that on six or more occasions beginning a year before the accident he made reports to the agent for the building about the faucet; and that repairs which were made upon it were only temporarily successful.

A journeyman plumber, called by the plaintiff, testified that when he removed the faucet after the accident, "he found the condition to be that where the stem passes the stuffing box was very loose"; that "the construction of the faucet as it is now wouldn't retard the stem from opening itself automatically"; that there was "play" in that part of the faucet which was attached by a washer and screw to the top; and that "the effect of the play upon water coming from the faucet would be to allow more water to flow than what the water was turned at"; that this "play" was the normal construction and condition of the faucet; that "the play is in there to line up any unbalanced part of the seat"; that "this was a good first-class make of faucet"; that that

"play" is in a new faucet; that this is the proper way a faucet should work and is not a defect; that the thread is in good shape but the stuffing box is not in good condition; that this faucet has more "play" than a new faucet would show; that the stuffing box is worn; that the effect would be to release the pressure of water coming out, and it would create less pressure; that it would open itself; that it would decrease the volume of the water; that "the water pressure would turn it"; and that if the hose were bent that would have a tendency to block it, and when the outrushing water finally broke the block there would be a spurt of water.

The defendant's evidence was to the effect that the faucet might leak at the top but could not turn itself on unless the threads were stripped, and then "it would snap to the top" and you could not close it or turn it; and that in fact the threads were not stripped.

If from the confused evidence narrated above a jury could find that by reason of a defect the faucet caused an explosive spurt of water such as the plaintiff described, there was no evidence tending to show that the defendant or any agent by whose knowledge she was bound knew or in the exercise of due care ought to have known that any such defect existed. Knowledge of such a common thing as a leaking faucet is not in our opinion notice that it is explosively dangerous. The defendant also knew that the water was very hot. But no one knew this better than the plaintiff herself. Indeed, the plaintiff knew at least as much about the faucet and the water in every respect as the defendant did. The real trouble with the plaintiff's case is that if there was any evidence warranting a finding that the defendant was negligent in respect to either the faucet or the water, evidence binding upon the plaintiff tends equally to show that the plaintiff was negligent in using them. *Perry* v. *Loew's Boston Theatres Co.* 291 Mass. 332, 334. *Hietala* v. *Boston & Albany Railroad,* 295 Mass. 186, 191. *Rego* v. *Sagamore Manuf. Co.* 305 Mass. 346. *Roy* v. *Oxford,* 317 Mass. 174, 176. *Granfield* v. *Herlihy,* 322 Mass. 313, 316. Cases cited in 38 Am. Jur. 757, 862. There is nothing in the circumstances

of the case to justify the application of different standards to these two parties.

The case is readily distinguishable from *Parsons* v. *Dwight-state Co.* 301 Mass. 324, and *Dahlgren* v. *Coe*, 311 Mass. 18.

*Exceptions overruled.*