SAMUEL WEISS *vs.* REPUBLIC PIPE & SUPPLY CORP.

Suffolk.   January 9, 1957. — February 6, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Sale,* Delivery.   *Agency,* Scope of authority or employment, Lent em-
ployee.   *Negligence,* Contributory, In unloading, In tying knot,
Heavy object, Res ipsa loquitur.

Evidence of a notification of a proposed delivery of a heavy boiler section
given to a buyer thereof by the deliverer, of later arrival of the section,
with equipment for moving it, at the buyer's premises on a truck op-
erated by an employee of the deliverer, and of participation by the
deliverer's employee and his use of such equipment in the process of
getting the section off the truck and into the basement of the buyer's
premises warranted findings that the deliverer contributed his employee
and equipment to that process and that the employee acted within
the scope of his employment by the deliverer in participating therein,
and did not require a finding that the deliverer's employee became for
the time being a servant of the buyer, despite testimony in behalf of
the deliverer that his deliveries were made only "either tailboard or
sidewalk . . . never in a . . . house or a cellar or place" and testi-
mony by an employee of the buyer present during the process that he
was "superintendent of" the process.   [425–426]
Evidence of the circumstances in which an employee of a deliverer of a
heavy boiler section to a buyer thereof participated with employees
of the buyer in unloading the section from a truck into the basement
of the buyer's premises warranted a finding that the deliverer's em-
ployee owed a duty of exercising ordinary care for the safety of the
other members of the group.   [426]
A finding that an employee of a buyer of a heavy boiler section, engaged
with an employee of a deliverer thereof in unloading it from a truck
into the basement of the buyer's premises and injured when a knot
tied by the employee of the deliverer in a rope used to ease the section
down a skid became untied and allowed the section to slide against the
buyer's employee, was guilty of contributory negligence in failing to
check the knot was not required as matter of law by the evidence in
an action for such injuries against the deliverer.   [426]
Evidence warranting findings that an employee of a deliverer of a heavy
boiler section participating with employees of a buyer thereof in un-
loading it from a truck at the buyer's premises had exclusive control
of a rope used in easing the section down a skid and of tying a knot in

the rope to fasten it to the section, and that while the section was be-ing lowered down the skid the knot became untied and allowed the section to slide against one of the buyer's employees justified a con-clusion under the doctrine of res ipsa loquitur that the deliverer's employee failed to use due care in tying the knot. [427–428]

TORT. Writ in the Superior Court dated April 23, 1953.

The action was tried before *O'Connell,* J.

*Charles J. Wilkins,* for the plaintiff.

*David H. Fulton,* for the defendant.

CUTTER, J. This is an action of tort seeking recovery for injuries to the plaintiff alleged to have been caused by the negligence of an employee of the defendant. A jury re-turned a verdict for the plaintiff. Under leave reserved, the trial judge entered a verdict for the defendant. The plain-tiff excepted. The case is here on the plaintiff's bill of exceptions.

The plaintiff was employed as a plumber at premises to which the defendant was about to deliver a boiler section, about six feet wide, six and a half feet long, and eight to ten inches thick, and weighing seven hundred fifty pounds. This "had been purchased by" the plaintiff's employer. A vice-president of the defendant called the plaintiff by tele-phone at about noon on the day of the accident to say that the boiler was coming about 4:30 that afternoon, if the plaintiff "would be there and have a couple of men there." The plaintiff said he would.

The boiler section, "standing on its edge," arrived on a truck operated by one Crawford, an employee of the de-fendant. Crawford backed the truck up to the sidewalk near a "full-sized" door to the building. The door was about three feet from the curbstone and opened on a plat-form about three feet wide which led to a stairway, six feet wide, of five steps to the basement. The plaintiff was there with two other men.

The truck driver produced skid boards and the plaintiff's two men and Crawford together laid the boiler section flat, brought it to the rear of the truck and skidded it to the door of the cellarway without touching the sidewalk, with

the assistance of a rope threaded through a rack in front of the truck and tied by Crawford to the boiler section by passing the rope through a hole on the top and then through the chimney hole. The rope was used by Crawford as a winch to ease the section down the skids. The boiler section was then tipped on end and pulled through the door by Crawford and the two men.

The plaintiff testified that he did not participate, but "was just standing there, watching them, supervising them," and that he "was instructing them, how to put it in." He assented in substance to the description of himself in a question on cross-examination as the "superintendent of the operation." He was satisfied that the boiler section would go down the stairs all right if "the rope would hold it," and admitted he saw to it that the rope was all right before they started but "had nothing to do with the tying of it."

The plaintiff further testified that Crawford then took a skid from the truck, put it on the cellar stairs, and began to slide the boiler section down the skid, easing the section down the stairs with the rope which was still threaded through the truck rack and tied to the boiler section. When the section was about three feet from the plaintiff, he "saw the knot become untied and the section slid down the stairs" and injured the plaintiff, who was "standing on the next to the last step, on the cellar stairs." There was no evidence of any tying of the knot after Crawford first tied it.

There was no evidence presented by either party as to the terms of the delivery agreement. The defendant's vice-president testified that he knew of no arrangements as to where the boiler was to be delivered. The defendant, he said, was a wholesaler and, on wholesale deliveries, made "tailboard delivery." This term means that where, as in the present case, there is no loading platform, they lower the "little elevator called the tailboard gate up to the sidewalk." The witness further testified that the defendant only delivers "either tailboard or sidewalk, whichever is more convenient for that truck, never in a man's house or a cellar or place."

The evidence relating to the extent of the defendant's responsibility with respect to delivery of the boiler section beyond the sidewalk or the tailboard of the truck is meager.[1] The jury did not have to believe the testimony of the defendant's vice-president that the usual extent of the defendant's obligation on items sold by it as wholesaler was "sidewalk" or "tailboard" delivery. However, this disbelief does not constitute proof of a greater obligation. See *Trott* v. *Yankee Network, Inc., ante*, 9, 14. The presence of the plaintiff with two men to assist him and his testimony that he was superintendent of the operation show that some responsibility was assumed, in behalf of the plaintiff's employer, for getting the boiler section off the truck and into the building.

We think, however, that there was sufficient evidence to warrant a finding by the jury that the defendant at least undertook to contribute Crawford, its driver, and the equipment which he had with him for use in the task of unloading. This can be inferred from the noonday telephone call between the plaintiff and the defendant's vice-president, from the active participation of Crawford in the work, and from the fact that he arrived at the premises with, and used, the boards. The jury were warranted also, in the light of the telephone conversation, in concluding that Crawford was acting in normal furtherance of the defendant's business, in selecting the method of unloading which he did, going only slightly beyond the sidewalk or tailboard delivery which the defendant's vice-president had testified was customary. See *Collins* v. *Croteau*, 322 Mass. 291, 293–294; *Giacomuzzi* v. *Klein*, 324 Mass. 689, 691; Restatement: Agency, §§ 228, 229; Harper and James, Law of Torts (1956 ed.) § 26.7. See also *Peay* v. *Reidy*, 321 Mass. 455, 459.

The plaintiff's testimony that he was supervising the operation does not require the conclusion that Crawford be-

---

[1] General Laws (Ter. Ed.) c. 106, § 32 (1), gives no assistance where, as here, it is plain that the defendant had a greater obligation than that statute would have imposed, since the defendant's vice-president plainly undertook to deliver the boiler section at least outside the premises of the plaintiff's employer.

came for the time being the servant of the plaintiff (compare *Patterson* v. *Barnes,* 317 Mass. 721, 723–724) or of the plaintiff's employer, but presented a question of fact for the jury. See *Morgan* v. *Smith,* 159 Mass. 570; *Driscoll* v. *Towle,* 181 Mass. 416, 418–420; *Oulighan* v. *Butler,* 189 Mass. 287, 290. Compare *Cowan* v. *Eastern Racing Association, Inc.* 330 Mass. 135, 141–147. See also Restatement: Agency, § 476. That testimony could be reasonably interpreted by the jury as showing merely (a) that the plaintiff was directing the group in all matters affecting his employer's interest, as, for example, where to place the boiler and in the route to be followed and (b) that the plaintiff himself was not actually participating in the physical work. It certainly does not require a finding that the plaintiff either could control, or purported to control, Crawford in the details of the unloading process and in the use of the equipment brought with him. The issue of the existence and extent of control was one of fact for the jury. Compare *Enga* v. *Sparks,* 315 Mass. 120, 122–123, and cases cited. The jury would be warranted in finding that the plaintiff and his two associates (in behalf of the plaintiff's employer), and Crawford (in behalf of the defendant) were engaged together in the unloading process on a basis in which Crawford owed a duty to exercise ordinary care for the safety of each other member of the group. See *Adams* v. *Dunton,* 284 Mass. 63, 66–67.[1]

The testimony with respect to the plaintiff's authority to supervise the work of Crawford was not so definite as to show that, as a matter of law, he was guilty of contributory negligence in failing to check the knot, with the tying of which, by Crawford, the plaintiff had nothing to do. Different inferences could be drawn from the evidence and it could have been found that the plaintiff's precautions for his own safety were reasonable (see *Runnells* v. *Cassidy,* 307

[1] Even if the jury found that Crawford and the others, directly and in behalf of their respective employers, were acting in a joint enterprise, the negligence of Crawford would not be imputed to the others in an action against a participant in, or party to the enterprise. *Alderman* v. *Noble,* 296 Mass. 30, 31–33. Compare *Beaucage* v. *Mercer,* 206 Mass. 492, 497–498.

Mass. 128, 129–131). This is not a case where the facts relied on to show that the defendant was negligent (here that the knot became untied) equally tend to show that the plaintiff was negligent. Compare *Campbell* v. *Hagen-Burger*, 327 Mass. 159, 162. It cannot be said as a matter of law that the inspection of the knot by the plaintiff would have revealed any defect or that the plaintiff, a plumber, unreasonably relied on Crawford's skill in matters of a type in which the latter might be expected to be more expert. See *Abbott* v. *Link-Belt Co.* 324 Mass. 673, 677–678.

There is no direct evidence of any negligence of Crawford, except that which arises from the fact that the knot came loose. However, this is the type of event, the mere occurrence of which constitutes evidence from which negligence may be inferred. As Holmes, J., said in *Graham* v. *Badger*, 164 Mass. 42, 47 (failure of splice in rope), "the jury from their experience . . . may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence." *Golden* v. *Mannex*, 214 Mass. 502, 504 (where "the very fact that the cable broke as it did was some evidence that it had become unsound"). *Hull* v. *Berkshire Street Railway*, 217 Mass. 361, 362–363 (broken trolley pole). *O'Neil* v. *Toomey*, 218 Mass. 242, 244 (slipping of cake of ice carried by iceman). *Cleary* v. *Cavanaugh*, 219 Mass. 281, 283 (broken elevator cable). *Glaser* v. *Schroeder*, 269 Mass. 337, 339–340 (brakes of parked automobile failed to hold). *Bachand* v. *Vidal*, 328 Mass. 97, 99 (parked automobile slipped on hill). See also *Doherty* v. *Booth*, 200 Mass. 522, 525. Compare *Musolino LoConte Co.* v. *Boston Consolidated Gas Co.* 330 Mass. 161, 163–164 (broken gas mains); *Hourigan* v. *Boston Elevated Railway*, 193 Mass. 495, 497–498 (breaking of inadequate rope selected by plaintiff's regular "superintendent"); *Long* v. *Kaplan, ante,* 94, 95–96. It was open to the jury to find, on the basis of their knowledge of knots, a matter reasonably within the range of their experience in ordinary life, (a) that it was more probable that the plaintiff was injured because Crawford failed to use due care in tying

the knot than that it occurred from any other cause, and (b) that a knot properly tied for a purpose of this character does not easily become untied.   See *Bachand* v. *Vidal, supra,* at page 99.   Cases where there is no evidence of any act which could have constituted negligence, or where the event or injury which occurred was foreseeable, or where there are no facts giving rise to a reasonable inference of negligence, can be distinguished.   Compare, for example, *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592, 594–596.   On the testimony, the jury could have found that Crawford had sufficiently exclusive control of the tying of the knot and of the rope and other equipment so that the strong probability was that Crawford was responsible for all matters relating to the rope.[1]   See *Couris* v. *Casco Amusement Corp.* 333 Mass. 740, 742;   Harper and James, Law of Torts (1956 ed.) § 19.7.   Compare *Reardon* v. *Boston Elevated Railway,* 247 Mass. 124, 126–127; *Wilson* v. *Colonial Air Transport, Inc.* 278 Mass. 420, 425–426.   There was no evidence that anyone but Crawford had anything to do with the tying of the knot and the record indicates no interference or likelihood of interference with it by anyone else during the unloading.

Since there was evidence which would warrant the jury in finding that Crawford, acting within the scope of his employment by the defendant, was negligent and that his negligence caused the plaintiff's injury, it was, therefore, error to enter a verdict under leave reserved.   The exceptions are sustained and judgment is to be entered on the verdict returned by the jury.

*So ordered.*

---

[1] The ownership of the rope is here wholly immaterial since no defect in it contributed to the accident.