RAYMOND RILEY *vs.* NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY & another.

Suffolk.    February 8, 1968. — March 5, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Negligence,* Telephone company, Pole, In use of way, Contributory. *Way,* Public: pole. *Proximate Cause. Evidence,* Relevancy and materiality.

Evidence of the circumstances in which, about two months after the aldermen of a city had ordered relocation and removal of a telephone pole located in a public way nearly in line with a retaining wall along a narrow driveway leading to the way, but while the pole was still at its old location, a motor vehicle being backed from the way into the driveway close to the pole slid on a slippery surface into the pole and the operator was injured warranted findings that the telephone company was negligent toward the operator and that its negligence was the proximate cause of his injuries, and did not require a ruling that he was guilty of contributory negligence. [12]

Where it appeared that, after the aldermen of a city had ordered relocation and removal of a jointly owned telephone-electric pole located in a public way, the electric company promptly set a new pole at the new location and moved its wires, but that the old pole with the telephone wires on it remained at the old location and brought about personal

injuries, it was held that the electric company was not liable for such injuries. [12]

On the record of an action against a telephone company for personal injuries sustained by the operator of a motor vehicle when it came in contact with a pole unlawfully maintained by the defendant in a public way, there was no error in exclusion of evidence that other motor vehicles had collided with the pole. [13]

TORT against New England Telephone and Telegraph Company and Boston Edison Company, with two counts in the declaration against each defendant. Writ in the Superior Court dated February 6, 1962.

At the trial before *Noonan*, J., the judge ordered verdicts for the defendants on all counts. The plaintiff alleged exceptions.

*Albert P. Zabin* for the plaintiff.

*Leon F. Sargent* for the defendant New England Telephone and Telegraph Company.

*John Arthur Johnson* for the defendant Boston Edison Company.

WHITTEMORE, J. The plaintiff sought recovery for injuries sustained when his truck driven by him slid on his icy driveway on Gambier Street, a public way in Newton, against a pole jointly owned by the defendants in the public way at the corner of the driveway. The judge in the Superior Court directed verdicts for the defendants.

Most of the facts are not in dispute. The plaintiff's driveway was nine feet wide. There was a stone wall along its inner edge which retained the lawn and the foundation of the plaintiff's house. There was also a low retaining wall on the driveway's outer edge between it and the driveway of the next house. The pole stood a short distance in from the traveled part of the way and nearly in the line of the low retaining wall. The driveway tilted very slightly toward the pole.

On February 7, 1961, at 8:45 P.M. the plaintiff was backing his truck into the driveway. The street was covered with snow and ice. The plaintiff had previously plowed the driveway, using the truck with an attached snowplow, to a width of from eight to eight and one-half feet. There was

about an inch of hard packed snow on the plowed portion of the driveway. The truck was loaded with half a ton of sand and was equipped with chains and the plow. It was six feet six inches wide with the plow attached and had a spare tire protruding from the driver's side of the truck. To manoeuver the truck in its backward course the plaintiff had opened the door and was looking directly back to be sure the spare tire cleared the pole. As the truck backed over the sidewalk with its rear four to five feet beyond the pole it began to slide toward the pole. The plaintiff started to close the door but before he could get his arm back in through the open window of the door it was caught between the windowsill and the pole.

The pole had been erected in 1929 and was moved slightly in 1946 pursuant to approval of the new location by the board of aldermen. The plaintiff in 1946 or 1947 and in 1951 or 1952 had complained to the Boston Edison Company about the pole. In 1957 or 1958 he talked to both the defendants about getting the pole relocated. On November 10, 1960, the defendants jointly petitioned the board of aldermen for an order of relocation. On December 5, 1960, the board issued an order by which it "DIRECTED that the location . . . be altered so that hereafter said poles [*sic*] shall be located, substantially as shown on the [attached] plan." This was to a point about thirteen feet farther down Gambier Street. The order also contained this direction: "One existing . . . pole to be removed." Edison in December, 1960, set up the new pole and a few days later changed over its lines. The jury could have found that the plaintiff wrote to the telephone company in January, 1961, asking it to take the old pole down. By referring to photographs in evidence they could have found that the telephone company had not removed its wires before the time of the accident.

Two statutes are relevant. They provide: G. L. c. 166, § 21 (as amended through St. 1951, c. 476, § 1), "A company incorporated for the transmission of intelligence by electricity or by telephone . . . or for the transmission of

electricity for lighting, heating or power . . . may, under this chapter, construct lines for such transmission upon, along, under and across the public ways . . . but such company shall not incommode the public use of public ways . . . ." G. L. c. 166, § 22 (as amended through St. 1948, c. 550, § 36), "A company desiring to construct a line for such transmission upon, along, under or across a public way shall in writing petition the board of aldermen of the city . . . where it is proposed to construct such line for permission to erect or construct upon, along, under or across said way the wires, poles, piers, abutments or conduits necessary therefor. . . . After a public hearing . . . the board of aldermen . . . may by order grant to the petitioner a location for such line, specifying therein where the poles, piers, abutments or conduits may be placed . . . . After the erection or construction of such line, the board of aldermen . . . may . . . direct an alteration in the location of the poles . . . ."

Undoubtedly the 1946 order of the board of aldermen made legal the presence of the pole. But the 1946 order was superseded by the order of December 5, 1960. After the expiration of a reasonable time for compliance with that order, the defendants had no right to maintain the pole in the old location. "The maintenance of the pole in the public highway by the defendant, without a lawful permit of the board of aldermen, created a nuisance in the highway . . . ." *Lynch* v. *Lowell Elec. Light Corp.* 263 Mass. 81, 86. See *Commonwealth* v. *Boston,* 97 Mass. 555.

The telephone company contends that it could not be found that in the two months from December 5, 1960, to February 7, 1961, a reasonable time for removal of the pole had elapsed because the plaintiff had not shown what the job entailed or what length of time would be required by it "in the prudential conduct of its business." We disagree. The new pole had been promptly placed. The exhibits show few wires remaining on the old pole. A reasonable inference from the evidence was that the actual physical

job was not complicated. Notices in respect of the pole had been given in 1957 or 1958. The location of the narrow driveway for many years between the stone wall on its upper side and the pole on the lower side made apparent to any observer the risk of injury. If there were factors in the company's business that tended to show that its other commitments made it unreasonable to move the wires promptly it was incumbent on the company to show them.

What was a reasonable time was a question of fact for the jury in the light of the foregoing and any other relevant evidence. *Bern* v. *Boston Consol. Gas Co.* 310 Mass. 651, 654–656. *Deagle* v. *Great Atl. & Pac. Tea Co.* 343 Mass. 263, 265. Prosser, Torts (3d ed.) § 36, pp. 208–209. See *Johnson* v. *Kanavos*, 296 Mass. 373, 377 (notice).

Edison had done all that it could do for the removal of the jointly owned pole. It could not move the telephone company's wires nor could it take down the pole with the wires on it. We conclude that, as to the plaintiff, the jointly owned pole was being maintained unlawfully by the telephone company alone. For this reason the verdicts were rightly directed for Edison.

The telephone company contends that the pole must be ruled to be only a passive condition and not a cause of the accident. We disagree. Placing an obstacle in the path of one rightly on a public way may be found to be negligence. *Douglas* v. *Whittaker*, 324 Mass. 398, 402. *Flannery* v. *State Mut. Life Assur. Co.* 339 Mass. 699. *Muldoon* v. *Fuller*, 341 Mass. 395, 396–397. It is unnecessary to characterize the pole as a nuisance. See the *Lynch* case, *supra.*

This is not the unusual case in which it can be ruled that there was contributory negligence as a matter of law. Compare *Campbell* v. *Hagen-Burger*, 327 Mass. 159, 162. There was evidence that as the plaintiff backed in there was only an inch or two of clearance between the spare tire and the pole. It was not necessarily careless in the circumstances not to have started the car nearer to the upper wall. Whether it was negligent to back in at all was also a jury question.

The judge excluded evidence that other automobiles had collided with the pole. This was confirmatory of the suggestion of the physical condition, made apparent in the photographs, and could have appropriately been received. We cannot, however, rule that its exclusion was error. *Robitaille* v. *Netoco Community Theatre of No. Attleboro, Inc.* 305 Mass. 265. The evidence, introduced by Edison, that the plaintiff had used the driveway 2,000 times a year and had backed in thousands of times did not make the evidence of other accidents admissible against the telephone company. Its tendency was primarily not to show that there was not a hazard but that the plaintiff was familiar with the place and had avoided the hazard.

The exceptions to the direction of verdicts for the telephone company are sustained. The exceptions to the direction of verdicts for the Boston Edison company are overruled.

*So ordered.*