LEROY PEAY *vs.* ROBERT C. REIDY, administrator.

Worcester.  April 9, 1947. — June 11, 1947.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or his family or his invitee, Elevator, Covenant against liability. *Negligence,* Invited person, Contractual limitation of liability, Elevator, Contributory. *Agency,* Scope of authority or employment.

A landlord of a business building, who retained control of an elevator therein and had granted to a tenant on an upper floor the privilege of having an employee of the tenant operate the elevator in the evening after the landlord's operator had left, owed to the tenant's employee, as a business invitee of the tenant, a duty to refrain from causing him injury through negligent conduct respecting the elevator.

A provision of a lease of premises on an upper floor of a business building, that the lessee would hold the lessor harmless against loss "by reason of any accident or damage to any person or property happening on" the demised premises, was inapplicable to injuries sustained by an employee of the lessee through alleged negligence of the lessor in connection with an elevator which remained in the lessor's control and did not form part of the demised premises.

A finding that an employee of the landlord of a business building, employed by him to operate an elevator therein, was negligent toward an employee of a tenant on an upper floor was warranted, and a ruling that the tenant's employee was guilty of contributory negligence was not required, by evidence of the circumstances in which on a certain evening, contrary to invariable custom and to an assurance given by the landlord's operator to the tenant's employee on that evening, the landlord's operator left the elevator, which the tenant's employee was later to operate in accordance with permission of the landlord, at an upper floor instead of at the street floor, and the tenant's employee, in darkness of the street floor resulting from wartime blackout regulations, fell into the elevator well and was injured.

An employee of the landlord of a business building, employed by him to operate an elevator therein, could properly be found to have been acting within the scope of his employment in telling an employee of a tenant on an upper floor that he would leave the elevator at the street floor for the tenant's employee to operate in a certain evening and in leaving the elevator at an upper floor instead, whereby the tenant's employee fell into the elevator well at the street floor and was injured.

TORT. Writ in the Superior Court dated November 19, 1942.

The case was tried before *Dowd*, J.

In this court the case was submitted on briefs.

*F. P. Ryan & S. Perman*, for the defendant.

*Nicholas Fusaro & Nunziato Fusaro*, for the plaintiff.

QUA, J. This action was originally brought against Maurice F. Reidy, the defendant's intestate, to whom we will refer as the defendant. On February 21, 1942, the plaintiff was injured by falling into an elevator well in a building on Foster Street in Worcester owned by the defendant. There was a verdict for the plaintiff, and the defendant excepted.

The defendant's building was three stories in height, with a basement, and was rented to a number of tenants. The defendant retained control of the elevator, which, it could be found, was in general operated by one White, an employee of the defendant. Peacock Beauty Shop, Inc., was a tenant on the third floor. It employed the plaintiff. His work seems to have been principally cleaning, which he would do in the early part of the day, but he would return again at 6:30 at night and relieve White in operating the elevator and would remain until eight o'clock or later

when all the Peacock customers had come down. There was evidence that the defendant had granted to the Peacock corporation the privilege of having its man operate the elevator in the evening after White left. See *Murphy* v. *Alpine Press Inc.* 291 Mass. 239, 241–242. The lease from the defendant to the Peacock corporation contained a provision by which the latter was to save the defendant harmless from any loss "by reason of the lessee's use or misuse of the demised premises and from any loss by reason of any accident or damage to any person or property happening on said premises."

There was evidence from which, the following additional facts could be found: The elevator was located about ten feet inside the door on the first floor. There was a door to the elevator well outside the elevator and in addition a folding gate "near the elevator." During the two years while the plaintiff had been running the elevator evenings the entrance to the building had been well lighted, but after January 9, 1942, blackout regulations having gone into effect, the lights were extinguished at 6:30 by White or by the janitor, and the plaintiff was instructed by the superintendent of the building not to turn them on. It was "black as the inside of a derby and couldn't see nothing." The elevator was operated after January 9 with only the elevator light on in the center of the elevator. This was lighted by a button inside the elevator. On the night of the accident, February 21, 1942, the plaintiff returned to the building at about six o'clock and rode up with White to the Peacock corporation, where the plaintiff got his pay. He rode down again with White and told White he was going to supper and would return at 6:30. White said it was all right, and that he would leave the elevator at the first floor for the plaintiff. The plaintiff had always found the elevator at the first floor when he reported for work at 6:30. There had never been a time when it was not at the first floor. When the plaintiff returned at about 6:35 White had gone. The building was very dark, and the door was locked. The plaintiff unlocked the door, but did not put on any lights because he had strict orders from the super-

intendent of the building not to put on any lights. He unlocked the door to the elevator well and slid it back. He could not see anything. He walked into space. White had left the elevator at the third floor instead of at the first floor.

There was no error in the judge's refusal to direct a verdict for the defendant.

The plaintiff was an employee of the tenant Peacock Beauty Shop, Inc. He was therefore a business invitee of that tenant, and as such he came to the elevator under the right of the tenant. The defendant owed him the same duty it would have owed to the tenant if the tenant had been a natural person and had been running the elevator himself evenings for his own benefit after the defendant's regular operator left. This rule was most recently discussed with the citation of many cases in *McCarthy* v. *Isenberg Bros. Inc., ante,* 170, which, in turn, rests largely upon *Peirce* v. *Hunnewell,* 285 Mass. 287.

In this case, however, as distinguished from the *McCarthy* and *Peirce* cases, there is nothing in the terms of the lease that limits the common law liability of the defendant to the plaintiff. The lessee's promise to indemnify the defendant referred only to the use of, and to damage happening upon, the demised premises, and the elevator was not a part of the demised premises. *Cussen* v. *Weeks,* 232 Mass. 563, 565. See now St. 1945, c. 445.

This case does not depend upon the somewhat technically defined duty of a landlord with respect to the keeping in repair of common passageways. The injury did not result from any want of repair of the elevator or from anything that can be considered a condition of the premises as distinguished from a mere instance of negligence of the defendant's servant in the performance of his work. The plaintiff can rely upon the simple duty of the defendant to refrain from negligent conduct causing injury to the plaintiff. *Watkins* v. *Goodall,* 138 Mass. 533. *Caruso* v. *Lebowich,* 251 Mass. 477. *Prushensky* v. *Pucilowski,* 269 Mass. 477, 480. *Henebury* v. *Cabot,* 288 Mass. 349. *DeCunto* v. *Broadway Savings Bank,* 306 Mass. 119. *Bacon* v. *Jaques,* 312 Mass. 371, 373–374.

There was evidence of a violation of this duty by the defendant's employee White. The jury could find that although White knew that the elevator had always previously been left at the first floor, where it would be natural for a departing operator to leave it, and although White on this occasion told the plaintiff that he was going to leave it at the first floor, and although White knew that the plaintiff would shortly return and in the darkness would open the door to the elevator well, nevertheless White took the unusual course of leaving the elevator at the third floor and leaving only an unoccupied well at the first floor. Doubtless White could rely to some extent upon the plaintiff looking out for himself, but it seems to us that the danger could be found to be so serious and the likelihood that the plaintiff in the performance of a routine task in what could be found to be total darkness would rely either upon the invariable practice or upon the assurance just given, or upon both, could be found to be so great that the judge ought not to assume the responsibility of deciding the issue of White's negligence, and was right in leaving it to the jury. See *McLeod* v. *Rawson*, 215 Mass. 257, 259; *Burwick* v. *McClure*, 318 Mass. 626, 631.

The defendant could be found to be responsible for the conduct of White both in assuring the plaintiff that he would leave the elevator at the first floor and in actually leaving it at the third floor. White was employed to operate the elevator, including leaving it for the plaintiff. Telling the plaintiff where he would leave it could be found to be an incident of that employment. *Fanciullo* v. *B. G. & S. Theatre Corp.* 297 Mass. 44, 47. Restatement: Agency, §§ 228, 229, and comments. See *Denny* v. *Riverbank Court Hotel Co.* 282 Mass. 176, 179; *Tetrault* v. *Ghibellini*, 316 Mass. 477, 479.

The issue of the plaintiff's contributory negligence seems to us also to have been for the jury. Many of the same elements are here involved that have already been mentioned in considering the question of White's negligence. The practice of leaving the elevator at the first floor and the promise of White to leave it there were factors that could not properly be withdrawn from the consideration of the

jury. *Hines* v. *Stanley G. I. Electric Manuf. Co.* 203 Mass. 288, 289–290. *Pierce* v. *Boston & Maine Railroad*, 216 Mass. 129, 131. *Hydren* v. *Webb*, 219 Mass. 542, 547. *Wilson* v. *Raider*, 317 Mass. 23, 24. Compare *Park* v. *Conveyancers Title Ins. & Mortgage Co.* 285 Mass. 487.

The defendant has not argued any of his requests for rulings, except as they relate to matters with which we have dealt in this opinion.

The defendant argues that the charge was faulty in several respects, but we find no error in any of the matters argued to which exception was taken at the time.

*Exceptions overruled.*