879 P.2d 766

**Billie Jo FORD, Plaintiff–Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF DONA ANA, Defendant–Appellee.**

No. 21671.

Supreme Court of New Mexico.

July 20, 1994.

Law Systems of Las Cruces, P.A., Anthony F. Avallone, Las Cruces, for appellant.

Law Office of T.A. Sandenaw, Thomas A. Sandenaw, Jr., Las Cruces, for appellee.

## OPINION

BACA, Justice.

 Plaintiff–Appellant, Billie Jo Ford, appeals the judgment entered against her and in favor of Defendant–Appellee, the Board of County Commissioners of the County of Dona Ana ("the County"). Pursuant to NMSA 1978, Section 34–5–14(C) (Repl. Pamp.1990), we accepted certification from the Court of Appeals to address one issue: What the duty of a landowner is to a public invitee and whether the district court erred in refusing to give an instruction to the jury that Ford was a business invitee. Because our jurisdiction under Section 34–5–14(C) extends to the entire case, *State v. Orosco,* 113 N.M. 780, 781 n. 2, 833 P.2d 1146, 1147 n. 2 (1992), we address the following additional issue: Whether the district court erred in refusing to give the jury an instruction on circumstantial evidence.

### I

This case arose out of injuries sustained by Ford after she fell on a slippery walkway located outside her place of employment. Ford was an employee of the New Mexico Veterans Service Agency ("the Agency"), and the Agency's office was located in a building owned by the County. The covered walkway leading to the Agency was adjacent to other County office facilities. The County owned and controlled the premises where the Agency office was located and also the covered walkway. Ford's job was to assist New Mexico veterans with veteran related problems. Her clients used the covered walkway leading up to the office entrance from the parking lot. Water collected on the walkway when it rained and the concrete surface of the walkway would become slick and smooth. On the day in question Ford entered the walkway after a rainstorm to determine if it was safe for her handicapped client to proceed down the walkway. Ford fell while testing the walkway.

When settling jury instructions, the court refused Ford's tendered instruction as to business visitors, determining that Ford was not a business visitor as to the County. The district court also refused Ford's tendered

instruction on circumstantial evidence and gave no circumstantial evidence instruction to the jury. After a jury trial and a defense verdict, judgment was filed against Ford and in favor of the County. Ford appeals from this judgment.

## II

We first address whether Ford was a public invitee of the premises owned and operated by the County and, if so, whether a public invitee is owed the same duty of care that a business visitor is owed under our Uniform Jury Instructions (UJI). Before the district court instructed the jury, Ford's counsel objected to the instructions proposed by the court defining Ford as a licensee and requested that the court use the tendered instructions referring to Ford as a business visitor. SCRA 1986, 13–1303 (Repl. Pamp.1991). The court refused to give the tendered instruction, explaining that "the UJI goes one step further on a business invitee and requires that the person coming on the premises be there in connection with the business of the owner, in this case the business of the County." Because Ford was there in connection with business of the State and not the County, the court concluded that she could not be a business invitee within the UJI definition, and instructed the jury only on the definition of "licensee" as provided for in SCRA 1986, 13–1308 (Repl.Pamp.1991).[1]

■ SCRA 1986, 13–1303 provides that "[a] business visitor is a person who is invited to enter, or permitted to remain on, the premises [in the possession] of another for a purpose connected with business dealings with the [owner] [occupant] of the premises." (Brackets in original.) The Directions for Use following the UJI explain that the "instruction is to be used if there is an issue as to whether the plaintiff was a business visitor." The Restatement (Second) of Torts

defines a business visitor as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Restatement (Second) of Torts § 332(3) (1964). In *Mozert v. Noeding,* 76 N.M. 396, 400, 415 P.2d 364, 366 (1966), this Court approved the Restatement (Second) of Torts' definition of a business visitor. The Court of Appeals in its Second Calendar Notice noted that the Restatement also provides a definition for public invitee. A public invitee is defined as "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." Restatement (Second) of Torts § 332(2). The Restatement further provides that "[a]n invitee is either a public invitee or a business visitor." Section 332(1). A licensee, on the other hand, is "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement (Second) of Torts § 330. The Court of Appeals held that Ford was a public invitee within the Restatement view and certified to this Court the question of whether the duty owed to a public invitee is the same as the duty owed to a business visitor.

■ In answering this question, we first address whether Ford was a business visitor or a public invitee, and whether the district court erred in refusing to instruct the jury on the definition of business visitor. New Mexico follows the Restatement view of invitees and licensees, and the Uniform Jury Instruction for business visitors directs the courts and the bar to the Restatement. We conclude that Ford was not a public invitee within the definition of the Restatement because she was not on the land "as a member of the public for a purpose for which the land is held open to the public;" rather, she was an employee of the Agency. We also deter-

---

1. SCRA 1986, 13–1308 provides:
   An [owner] [occupant] owes a duty to a licensee if, and only if:
   (1) [He] [She] knows or has reason to know of a condition of [his] [her] land involving an unreasonable risk of harm to the licensee; and
   (2) [He] [She] should reasonably expect that the licensee will not discover or realize the danger.

In such case, [he] [she] has a duty to make the condition safe or to warn the licensee of the condition and risk involved; however, if the licensee knew or had reason to know of the condition, the [owner] [occupant] has no duty to warn.
(Brackets in original).

mine that Ford was not a licensee, but a business visitor. As an employee of the County's tenant, the Agency, Ford "was a business visitor to whom [the County], as owner of the building, owed such a duty." *Broome v. Byrd,* 113 N.M. 38, 39, 822 P.2d 677, 678 (Ct.App.1991); *see also Latham v. Aronov Realty Co.,* 435 So.2d 209, 210 (Ala. 1983) (determining that employee of tenant was invitee of landowner); *Peay v. Reidy,* 321 Mass. 455, 73 N.E.2d 737, 738 (1947) (holding that plaintiff-employee was a business invitee of tenant and defendant-landlord owed employee the same duty it owed tenant). Ford was a business visitor of the County and the district court erred in concluding that Ford was merely a licensee and in instructing the jury as to the duty of care owed to a licensee.[2]

Having concluded that the proper jury instruction was not given as to Ford's status on the land, we now undertake, as we indicated we might do in *Bober v. New Mexico State Fair,* 111 N.M. 644, 648–49 n. 5, 808 P.2d 614, 618–19 n. 5 (1991), to follow the minority of jurisdictions that have eliminated the distinction between licensees and invitees, and substitute instead a single standard of reasonable care under the circumstances, while retaining trespassers as a separate classification. *See, e.g. Wood v. Camp,* 284 So.2d 691, 695 (Fla.1973); *Poulin v. Colby College,* 402 A.2d 846, 851 (Me.1979); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 51–52 & n. 7 (1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639, 647 (1972); *O'Leary v. Coenen,* 251 N.W.2d 746, 751 (N.D.1977); *Hudson v. Gaitan,* 675 S.W.2d 699, 703 (Tenn.1984); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1, 11 (1975).

The first jurisdiction to abandon the rigid application of the common-law categories was, ironically, the jurisdiction of their birth. In 1957 Great Britain's Parliament enacted a statute abolishing the distinctions between licensees and invitees. Occupiers' Liability Act, 1957, 5 & 6 Eliz. 2, ch. 31 (Eng.). A few years later the United States Supreme Court declined to adopt the common law distinctions for admiralty proceedings, reasoning that

> [t]he distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances."

*Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630–31, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959) (footnotes omitted). The Court proceeded to hold that "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Id.* at 632, 79 S.Ct. at 410.

Thereafter, California became the first United States jurisdiction to completely abrogate the common-law distinctions. *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968). The California Court stated:

> [T]o focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules

---

**2.** Had the district court properly determined Ford's status as that of a business visitor, the appropriate duty of care instruction, at the time, would have been SCRA 1986, 13–1309 (Repl. Pamp.1991). *See Klopp v. Wackenhut Corp.,* 113 N.M. 153, 159, 824 P.2d 293, 299 (1992).

obscure rather than illuminate the proper considerations which should govern determination of the question of duty.... [E]veryone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property. The factors which may in particular cases warrant departure from this fundamental principle do not warrant the wholesale immunities resulting from the common law classifications, and we are satisfied that continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity and confusion. We decline to follow and perpetuate such rigid classifications.

*Id.* 70 Cal.Rptr. at 104, 443 P.2d at 568.

Following California's lead, other jurisdictions completely eliminated the common-law distinctions between licensee, invitee, and trespasser. *See Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97, 100–05 (D.C.Cir. 1972), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973); *Webb v. City of Sitka,* 561 P.2d 731, 732–34 (Alaska 1977); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308, 314–15 (1971); *Pickard v. City and County of Honolulu,* 51 Haw. 134, 452 P.2d 445, 446 (1969); *Cates v. Beauregard Electric Cooperative, Inc.,* 328 So.2d 367, 371 (La.1976); *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631, 633–34 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 566–68, 352 N.E.2d 868, 871–72 (1976). A handful of jurisdictions, however, repudiated only the distinctions between licensees and invitees while maintaining the limited-duty rules for trespassers. *See, e.g. Wood,* 284 So.2d at 695; *Poulin,* 402 A.2d at 851 n. 5; *Mounsey,* 297 N.E.2d at 51–52 & n. 7; *Peterson,* 199 N.W.2d at 647; *O'Leary,* 251

N.W.2d at 751; *Hudson,* 675 S.W.2d at 703; *Antoniewicz,* 236 N.W.2d at 11.

Although we have not found that the licensee-invitee distinction has "produced confusion and conflict" to the extent enunciated in *Kermarec* and other cases eliminating the common-law distinctions, the reasoning underlying those courts' opinions is equally valid here.[3] "In many instances, recovery by an entrant has become largely a matter of chance, dependent upon the pigeonhole in which the law has put him, e.g., 'trespasser,' 'licensee,' or 'invitee'—each of which has had radically different consequences in law." *Peterson,* 199 N.W.2d at 643. We are unable to justify the recovery of damages by a plaintiff for injuries sustained due to the negligence of a landowner merely because the plaintiff was a licensee and not an invitee. *Poulin,* 402 A.2d at 850–51. Although we follow California's reasoning that "[a] [person's] life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another ... with permission but without a business purpose," *Rowland,* 70 Cal.Rptr. at 104, 443 P.2d at 568, unlike California, we limit our holding to licensees and invitees. "We are unconvinced that the status of trespasser fails to carry continued significance in our modern society. Whereas both invitees and licensees enter another's lands under color of right, a trespasser has no basis for claiming extended protection. There remains the possibility that the abandonment of the status of trespasser would place an unfair burden on a landowner who has no reason to expect a trespasser's presence." *Poulin,* 402 A.2d at 851 n. 5 (citation omitted); *see also Wood,* 284 So.2d at 696.

---

3. We note, however, that our own Uniform Jury Instructions in the area have the potential of producing much confusion. Our Uniform Jury Instructions contain instructions on: (1) the duty to a licensee, SCRA 1986, 13–1308; (2) the duty to a business visitor arising from a condition of the premises, SCRA 1986, 13–1309 (Repl. Pamp.1991); (3) the duty to a business visitor when there is a known or discoverable danger, SCRA 1986, 13–1310; (4) the duty to licensee-business visitor limited in scope, SCRA 1986, 13–1311 (Repl.Pamp.1991); (5) the duty to a busi-

ness visitor who slips and falls when the dangerous condition was not created by the proprietor, SCRA 1986, 13–1318 (Repl.Pamp.1991); and (6) the duty to a business visitor who slips and falls when the dangerous condition was caused by the proprietor or actual knowledge was shown, SCRA 1986, 13–1319 (Repl.Pamp.1991). We find the abundance of instructions on the duty of care owed to licensees and invitees to be confusing and reinforces our decision today to eliminate the common-law distinctions of licensees and invitees.

Rather than continue to hinge liability of a landowner upon whether an entrant upon land is an invitee or a licensee, we will apply, from this point on, the ordinary principles of negligence to govern a landowner's conduct as to a licensee and invitee. A landowner or occupier of premises must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk. This duty of care shall extend to all persons, other than trespassers, who enter property with the defendant's consent, express or implied.[4] *Antoniewicz,* 236 N.W.2d at 11; *see also Mounsey,* 297 N.E.2d at 51–52 & n. 7; *Peterson,* 199 N.W.2d at 647. In determining reasonable care, the status of the entrant may be considered as a factor, but will no longer be the determinative factor in assessing the landowner's or occupier's liability. *See Peterson,* 199 N.W.2d at 647. "The principal issue, however, will not be 'in what category shall we place the injured person' but, rather, 'did the owner (or the person responsible) act as a reasonable person in view of the probability of injury to persons entering upon the property.'" *Id.* Accordingly, we modify SCRA 1986, 13–1309 to read: "An owner owes a visitor the duty to use ordinary care to keep the premises safe for use by the visitor." The defense of comparative negligence shall continue to be available to the defendant, and the entrant shall be held to the exercise of reasonable care. The rule of law announced in this case is to apply to all cases involving entrants upon land "who are entitled to reasonable care under the circumstances, except such cases as have been concluded by judgment or settlement or have been barred by the running of a statute of limitations." *Hudson,* 675 S.W.2d at 704.

Here, the County, as the landlord of the premises, owed Ford the duty of reasonable care in the areas under its control. *Cf. Ann M. v. Pacific Plaza Shopping Center,* 6 Cal. 4th 666, 25 Cal.Rptr.2d 137, 143, 863 P.2d 207, 213 (1993) (holding that a landlord owes a duty of reasonable care to its tenants). Although the court gave ordinary care instructions in this case, SCRA 1986, 13–1603 and 13–1604 (Repl.Pamp.1991), it gave those instructions immediately following the jury instruction stating that Ford was a licensee and the jury instruction stating that the County owed a duty of care to Ford only if it knew or had reason to know of the unreasonable risk of harm to Ford *and* it should have reasonably expected that Ford would not discover or realize the danger. *See* SCRA 1986, 13–1308 (duty to a licensee). It appears that the ordinary care instructions were given only to instruct the jury as to Ford's duty of care for purposes of comparative negligence. Even if this Court were to presume, however, that the ordinary care instructions were given to instruct the jury as to the County's duty of care, those instructions remain in conflict with the more specific instructions labelling Ford as a licensee and describing the duty of care to a licensee. This Court cannot presume that the jury applied only the ordinary care instructions and completely ignored the instruction on the duty of care owed to a licensee. Accordingly, we reverse and remand for a new trial. On remand the jury should be instructed only as to the duty owed a visitor under SCRA 1986, 13–1309, modified to delete "business," and as to ordinary care and the duty to use ordinary care under SCRA 1986, 13–1603 and 13–1604.

### III

We next address whether the district court erred when it refused to give the jury a tendered instruction on circumstantial evidence. The Directions for Use following SCRA 1986, 13–308 (Repl.Pamp.) state that the instruction "will be given [when] circumstantial evidence has been produced." SCRA 1986, 1–051 (Repl.Pamp.1991), Instructions to Juries, states that "instruction[s] applicable in the case ... shall be used unless under the facts or circumstances of the particular case the published UJI Civil is erroneous or otherwise improper, and the trial court so finds and states of record its

---

4. The rules governing the duty of care owed to a trespasser by a landowner will remain as they are found in SCRA 1986, 13–1305 to –1307 (Repl.Pamp.1991).

reasons." The district court refused to give the tendered instruction, explaining that no circumstantial evidence was produced at trial.

 "Whether evidence is characterized as circumstantial or as direct turns upon whether or not the evidence requires the trier to reach the ultimate factual proposition to which the evidence is addressed by a process of inference.... The relationship of the evidence to the ultimate factual proposition it supports determines its character; that is, if the evidence ultimately is directed toward an inferred fact, it is circumstantial, even though it is directly supportive of the initial proposition from which inferences are to be drawn." Graham C. Lily, *An Introduction to the Law of Evidence* § 2.7 (2d ed. 1987).

Although it appears that circumstantial evidence was produced at trial so as to warrant a circumstantial evidence instruction, in order for this Court to determine whether the district court erred, we must be able to review the evidence that was before the trial court. Only then can we determine whether the evidence supported giving the circumstantial evidence instruction. All that was submitted before this Court, however, was the record proper and the briefs of the parties. The transcript of proceedings was not filed with the Court of Appeals and, hence, is not before this Court either. Without out the transcript of proceedings we cannot determine whether circumstantial evidence existed to warrant giving the instruction to the jury. "In the absence of evidence in the record showing error, a presumption exists on appeal that the instructions were in accordance with the legal effect of the evidence." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). "It is the burden of the appellant to bring up a record sufficient for review of the issues she raises on appeal." *Reeves v. Wimberly*, 107 N.M. 231, 236, 755 P.2d 75, 80 (Ct.App.1988). Although Ford directs us to evidence and testimony supporting her argument in her brief in chief, statements made in briefs are mere allegations and cannot be considered as evidence by this Court. *Cf. V.P. Clarence Co. v. Colgate*, 115 N.M. 471, 472, 853 P.2d 722, 723 (1993). Accordingly, we conclude that this issue has been waived by Ford. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

MONTGOMERY, C.J., and RANSOM, J., concur.