IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
February 10, 2022 03:49 PM
ST-2018-CV-00241
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| LINCOLN ALLAHAR, ) | CASE NO. ST-2018-CV-00241 |
| ) | |
| Plaintiff, ) | ACTION FOR DAMAGES |
| ) | |
| -vs- ) | JURY TRIAL DEMANDED |
| ) | |
| 2DD BJERGE GADE, LLC, MTM BUILDER ) | |
| DEVELOPMENT, INC. and ROGER MISAK, ) | |
| ) | |
| Defendants. ) | |

Cite as: 2022 VI Super 18U

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

¶1   The following are pending before the Court:

1. Defendants' Motion for Summary Judgment and Memorandum of Law, filed on August 30, 2021;

2. Plaintiff's Opposition to Motion for Summary Judgment, filed on September 23, 2021;

3. Plaintiff's Response to Defendant's Undisputed Statement of Facts in Support of Defendants Motion for Summary Judgment, filed on September 23, 2021; and

4. Defendants' Reply in Support of Motion for Summary Judgment, which was filed on October 7th, 2021.

Defendants' Motion for Summary Judgment will be denied because they failed to meet their burden demonstrating that there is no genuine dispute that (1) they were not dog owners as defined by Sections 2602(a) and 2602(12) of Title 19 of the Virgin Islands Code; and (2) Lincoln Allahar was not lawfully on the subject premises.

### II.  FACTUAL AND PROCEDURAL BACKGROUND

¶2   Defendants Roger Misak ("Misak") and 2DD Bjerge Grade, LLC ("2DD") moved for summary judgment pursuant to Rule 56 of the Virgin Islands Rules of Civil Procedure on Plaintiff Lincoln Allahar's ("Allahar") claim to recover damages for a dog bite suffered on March 7, 2018. The incident occurred at 2DD's Property when Allahar responded to Misak's request that he repair a magnetic lock on the security gate of 2DD Bjerge Grade, installed by Alarmco.

¶3      Allahar is the owner and president of Alarmco, which is a security company located on St. Croix with approximately eight employees.[1] In addition to serving as the President, Allahar goes "in the field and [does] repairs as needed" in St. Thomas.[2]

¶4      2DD is a company that was formed by Dean F. Morehouse ("Morehouse")[3] for the purpose of ownership of a residential property located at 2DD Bjerge Gade (the "Property"). Morehouse is the manager and the only member with an ownership interest in 2DD.[4] On the Property, there was "a big wrought iron gate" that was "probably 4 foot wide, 10 foot tall" and installed in between two concrete walls or pillars.[5] The gate had a magnetic clock on it and a mechanical dead bolt that was "accessible both from the interior of the property and the street side or exterior of the property."[6]

¶5      During his June 16, 2020 deposition, Morehouse stated that he is familiar with Misak because "[h]e worked for one of the contractors [(Custom Builders)] that did work on 2DD."[7] Shortly after the renovation project was complete, Defendant Misak became the caretaker of 2DD's Property.[8]

¶6      As the caretaker of the Property, Misak lived in a studio apartment located next to the pool and had access to the home, "the authority to allow contractors onto the premises to do work, to allow visitors onto the premises, and he had the authority to ask visitors to vacate the premises."[9] Misak was in communication with Morehouse "at least on a monthly basis," and "on an as-needed basis."[10] He occupied the Property rent free. As the caretaker of the Property, Misak was "there for security reasons, to turn lights on and off at night so people wouldn't know that it was unoccupied."[11] Misak also "took care of the pool, swept up leaves on the courtyards; [and] did some minor repairs when needed."[12]

¶7      Angilica Lee ("Lee") also lived on 2DD's Property. Lee owns a janitorial company for commercial businesses called AGF Contracting.[13] Lee provided housekeeping services for Morehouse's Property; however, she first met Morehouse when she worked at Sapphire beach renting jet skis.[14] Morehouse called Lee the morning before Hurricane Irma and asked if she had a safe place to stay and offered her to stay at the house located at 2DD with her family.[15] Lee

---

[1] Ex. 1 at 8
[2] Ex. 1 at 8
[3] Ex. 2 at 11
[4] Ex. 2 at 12
[5] Ex. 2 at 19
[6] Ex. 2 at 32
[7] Ex. 2 at 14
[8] Ex. 3 at 16
[9] Ex. 2 at 21, 66
[10] Ex. 3 at 67
[11] Ex. 2 at 18
[12] Ex. 2 at 18
[13] Ex. 4 at 14
[14] Ex. 4 at 16, 18
[15] Ex. 4 at 16

moved onto the Property on or about September 2017 with her kids and her Rottweiler dog named Rocky.[16] Lee testified that she purchased Rocky for her son when Rocky was about two months old.[17] When Lee went to work during the day, Rocky would freely roam the Property, "he [could] walk around the pool and come inside and drink his water, and he's in and out" but he did not have access to get inside the upstairs unit "because there is another door [for] upstairs."[18]

¶8     In May or June of 2017 there was "a problem with the same magnetic lock at the entrance gate" and Allahar "swapped the pairs on the wire."[19] "[M]aybe a few years before that…[Allahar] replaced a battery and a switch the same week…[and] before that [was the one who] actually installed that system."[20] Allahar testified that he "was there a couple of times before that, but [doesn't] recall if [Misak] was there at the time."[21] On March 5, 2018, Misak called and left a message for Allahar that there were problems with the gate located on 2DD's Property.[22] The gate itself has a magnetic lock and a dead-bolt that is keyed on both sides of the gate.[23]

¶9     During his June 10, 2020 deposition, Allahar testified that when he returned Misak's call on March 5th, he communicated that it was his intention to repair the lock on the gate on March 7th after seeing a client that he had previously scheduled an appointment with. However, Allahar did not schedule a specific appointment time to repair the gate at 2DD's Property. Allahar merely communicated that he would go check out the gate after his first appointment.

¶10     On March 7, 2018, Allahar took the sea plane from St. Croix to St. Thomas and went to his first appointment. Once finished , he called Misak but "didn't get an answer," and so he "left a message and then went to the house."[24] For his past visits to the Property, Allahar indicated that he would call Misak before or at the time he arrived to make him aware that he was coming, rather than scheduling a fixed time.

¶11     Prior to Allahar coming, Misak "had been outside the gate working, and when [he] came back in, [he] didn't lock it back up because [he] was going to go back out."[25] When Allahar arrived to the Property, the gate was closed but unlocked.[26] Allahar could see that the front door was open so he called out to Misak.[27] Misak admitted that he was in the living room when he heard his name "Roger" being called out a couple of times.[28] Allahar said that no one came to the door, so he "push[ed] the gate open, stepped in a little bit closer hoping that he would hear me" and called

---

[16] Ex. 4 at 16
[17] Ex. 4 at 35-38
[18] Ex. 4 at 80
[19] EX.1 at 16
[20] Ex. 1 at 19
[21] Ex. 1 at 19
[22] Ex. 1 at 13
[23] Ex. 3 at 31
[24] Ex. 1 at 15
[25] Ex. 3 at 46
[26] Ex. 3 at 79
[27] Ex. 1 at 17
[28] Ex. 3 at 44

again.[29] Allahar testified that at that point, Misak came outside with a Rottweiler dog next to him. Then Allahar identified himself two times and called out to Misak by his first name and said that he "came to fix the gate."[30]Allahar testified that Misak then commanded the dog to "Get!" while raising his hand and then the dog came and grabbed his ankle.[31]

¶12 In contrast, during his June 12, 2020 deposition, Misak testified that he heard someone calling his name, walked to the front door "and saw somebody had opened the gate – inside the gate a couple feet, and [he] didn't want them on the property," so he yelled "Get out. Get out."[32] Misak then said Rocky "came to the front door and saw him and took off."[33] He said: "as soon as Rocky went shooting by me, I took off towards the front gate also and pulled Rocky away and shut the gate, and took Rocky inside and put him out on the balcony and brought Mr. Allahar into the house."[34] Rocky bit through Allahar's pants and socks and punctured his skin. There was "quite a bit of blood" and Misak helped attend to the bleeding ankle wound.[35]

¶13 On March 9, 2018, Allahar left for a vacation in Florida with his family. On March 11, 2018, while in Florida, Allahar sought professional medical treatment from Plantation General Hospital because he noticed "around the area started to swell and get a little more red" and his "foot started to hurt more."[36] He received and injection and hospital personnel cleaned the wound.[37] On March 13, 2018, Allahar went back to the hospital because he "stated getting more pain, and the redness around the area started increasing."[38] Personnel at the hospital told Allahar that the wound looked infected and that he should see a specialist.[39] On March 14, 2018, Allahar was admitted to the hospital and was given antibiotics through an IV, proscribed an oral and topical antibiotic and was discharged on March 15, 2018.[40] He sought further medial attention at the beginning of April because "the wound was not completely healed, and [he] was still getting some pain."[41] He has not received any medical treatment for the injury since April 17, 2018.[42]

---

[29] Ex. 1 at 17
[30] Ex. 1 at 17
[31] Ex. 1 at 17
[32] Ex. 3 at 46
[33] Ex. 3 at 46
[34] Ex. 3 at 48
[35] Ex. 3 at 48
[36] Ex. 1 at 25
[37] Ex. 1 at 26
[38] Ex. 1 at 16
[39] Ex. 1 at 27
[40] Ex. 1 at 29
[41] Ex. 1 at 31.
[42] Ex. 1 at 40

### III.   LEGAL STANDARDS

#### a.   Summary Judgment.

¶14   Virgin Islands Rule of Civil Procedure 56 governs motions for summary judgment. "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[43]   The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of any material fact and that it is entitled to judgment as a matter of law.[44]   This burden may be met by pointing out that there is an absence of evidence to support a particular element of the nonmoving party's case.[45]

¶15   Once the moving party makes its showing, the opposing party must "make a showing sufficient to establish existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."[46]   The opposing party may not rest on mere allegations but must present actual evidence showing a genuine issue for trial.[47]   The party opposing summary judgment "shall affix to [its brief] copies of, and cite to, the precise portions of the record relied upon as evidence of each material fact."[48]   The opposing party must provide more than a scintilla of supporting evidence to survive a motion for summary judgment.[49]   Further, "because summary judgment is a drastic remedy, the grant of a motion for summary judgment is allowed only where the moving party shows that the 'pleadings, the discovery and disclosure materials on file, and any affidavits, show there is no genuine issue as to any material fact.'"[50]

¶16   Courts in the Virgin Islands have previously held that "summary judgment is a drastic remedy and should not be used to short-circuit litigation by deciding disputed facts without permitting the parties to reach a trial on the merits."[51] A motion for summary judgment should therefore be granted "only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact."[52] In the Third Circuit Court, it is well settled that "a single, nonconclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment or judgment as a matter of law."[53]

---

[43] V.I. R. Civ. P. 56(a).

[44] *Id.*

[45]   *Williams v. United Corp.*, 50 V.I. 191, 193–95 (V.I. 2008)

[46] *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013)

[47] *Williams*, 50 V.I. at 194.

[48] *Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 658-59 (2019) (citing *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)).

[49] *Anderson v. Am. Fed'n of Teachers*, 67 V.I. 777, 788-89 (2017) (citing *Perez*, 59 V.I. at 527-28).

[50] *Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 658-59 (2019) (*citing Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)).

[51] *Brodhurst v. Frazier*, 57 V.I. 365, 373-74 (V.I. 2012); *see also Rymer v. Kmart Corp.*, 68 V.I. 571, 575 (V.I. 2018) (characterizing summary judgment as a drastic remedy).

[52] *Id.*

[53] *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d. 180, 189–90 (3d Cir.2011) (*citing Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161–63 (3d Cir.2009)).

*Lincoln Allahar v. 2DD Bjerge Gade, LLC, et al.*
Case No. ST-2018-CV-00241
**Memorandum Opinion and Order**
**Page 6 of 11**

2022 VI Super 18U

¶17    Subsection (B) of Rule 56 indicates that "a party opposing entry of summary judgment must address in a separate section of the opposition memorandum each of the facts upon which the movant has relied…"[54] The opposing party must either "agree[] that the fact is undisputed for the purposes of ruling on the motion for summary judgment only; or state[] that the fact is disputed and provid[e] affidavit(s) or citations identifying specifically the location(s) of the material(s) in the record relied upon as evidence relating to each such material fact."[55] "A fact is material if it can affect the outcome of the case," and a genuine dispute exists if the evidence is such that a reasonable jury could find in favor of the nonmoving party on the disputed fact.

### b.  Strict Liability of Dog Owners.

¶18    Title 19, Section 2612 of the Virgin Islands Code governs liability of owners. Specifically, Section 2612 (a) states that "[o]wners of dogs shall be liable for any damage done by their dogs."[56] Courts have determined that the "plain language of section 2612 (b) imposes strict liability on the 'owners' of a dog who bites any person regardless of whether the owner was negligent or was aware of the former viciousness of the dog."[57] Section 2612 (b) provides:

> The owners of any dogs which shall bite any person, while such person is on or in a public place, or lawfully on or in a private place, including the place of the owner of such dogs, shall be liable for such damages as may be suffered by persons bitten, regardless of the former viciousness of such dog or the owners' knowledge of such viciousness. A person is lawfully upon private property of such owner within the meaning of this section when he is on such property in the performance of any duty imposed by the laws of the Virgin Islands or by the laws or regulations of the United States, or when he is on such property upon invitation, expressed or implied, of the owner thereof; provided, however, no owner of any dog shall be liable for any damages to any person or his property when such person shall mischievously or carelessly provoke or aggravate the dog inflicting such damages; nor shall any such owner be so liable if at the time of any such injury he had displayed in a prominent place on his premises a sign easily readable including the words 'Bad Dog' or 'Beware of Dog'.[58]

¶19    The statute defines "owner" in two ways. Section 2602(2) defines "owner" as "any person owning, keeping or harboring any domestic animal, or leasing any domestic animal from another, or any person who allows a domestic animal habitually to remain about the premises inhabited by such person."[59] Whereas, Section 2602(12) defines "owner" as

> [A]ny person, firm, corporation, or organization who possesses, harbors, keeps, or has an interest in, or who has control or custody of an animal. If the owner or keeper

---

[54] V.I. R. Civ. P. 56(c)(2)B).
[55] V.I. R. Civ. P. 56(B)(i)-(ii).
[56] 19 V.I.C. § 2612(a)
[57] *See Hawkins v. Greiner*, 66 V.I. 112, 118
[58] 19 V.I.C. § 2612(b)
[59] 19 V.I.C. § 2602(2)

*Lincoln Allahar v. 2DD Bjerge Gade, LLC, et al.*
Case No. ST-2018-CV-00241
**Memorandum Opinion and Order**
**Page 7 of 11**

2022 VI Super 18U

of a dangerous dog is a minor, the parents or guardians of that minor shall be responsible for compliance with the specifications of this chapter, for the care and housing of the animal and shall also be liable for all injuries and property damage sustained by any person or domestic animal as a result of an attack by the dangerous dog.[60]

These two definitions of 'owner' can be read together and harmonized such that a person who meets either definition may be found liable for any injuries suffered by a person bitten by a dog.[61]

¶20    Section 2602(13) further explains that 'unprovoked' means that the person bitten or attacked:

(a) did not mischievously or carelessly provoke or aggravate the dog;
(b) was not committing a willful trespass or other tort upon the premises occupied by the owner of the dog;
(c) was not tormenting, abusing, or assaulting the dog;
(d) has not in the past been observed or reported to have tormented or abused or assaulted the dog; or
(e) was not committing or attempting to commit a crime.[62]

¶21    In *Hawkins v. Greiner*, this Court found that defendant landlords could be held liable for injuries under the Virgin Islands dog bite statute because they were considered 'owners' of a dog as defined by Section 2602. The Defendant in that case contended that they "did not fall under the legal definition of 'owner' because they were non-resident property owners who leased the apartment to the dog's true owner."[63] They further argued that "sections 2602(2) and 2602(12) exclude landlords from the definition of 'owner' and thus, they cannot be held liable under the dog bite statute."[64] However, the plaintiff set forth that the defendant fell "squarely under the definition of 'owner' as defined in the last phrase of section 2602(2) because they 'allow[ed] a domestic animal habitually to remain about the premises inhabited by such person.'"[65] The Court explained that it was clear that the plaintiffs were not seeking to impose liability on the defendant's status as a landlord, but rather based on the fact that they allowed a dog to habitually remain on or about the property in question. Ultimately, the Court held that there was no genuine issue of material fact in dispute that the defendant landlords were also legal owners of the dog for purposes of Section 2612 and reasoned that the defendant landlords "knew that their tenant kept a dog on the property, they knew that the dog was habitually on the property for at least one year prior to the bite, and they allowed the dog to remain on the property."[66]

---

[60] 19 V.I.C. § 2602(12)
[61] *Hawkins v. Greiner*, 66 V.I. 112, 119 (quoting *People of the Virgin Islands v. Baxter*, 49 V.I. 384, 393 (V.I. 2008) ("opining that a statute should "be interpreted to give consistent, harmonious and sensible effect to all its parts.").
[62] 19 V.I.C. § 2602(13)
[63] *Hawkins v. Greiner*, 66 V.I. 112, 120
[64] *Id.*
[65] *Id.* (*quoting* 19 V.I.C. § 2602(2)).
[66] *Hawkins v. Greiner*, 66 V.I. 112, 120

## IV.    ANALYSIS

¶22    The Court considers first whether Defendant Misak is considered an "owner" of the dog under Title 19 of the Virgin Islands Code, Sections 2602(2) and 2602(12); and second, that although Defendant 2DD was in fact the dog's "owner" in accordance with the statute, whether Allahar was lawfully on the Property such that 2DD may be found liable for damages.

### a. 2DD and Misak failed to meet their burden of showing that  there are no genuine issues of any material fact that they are not owners as defined by Sections 2602(2)  and  2602(12) of Title 19 of the Virgin Islands Code.

¶23    As stated above, Section 2602(2) defines "owner" as "any person owning, keeping or harboring any domestic animal, or leasing any domestic animal from another, or any person who allows a domestic animal habitually to remain about the premises inhabited by such person."[67] Whereas, Section 2602(12) defines "owner" as "any person, firm, corporation, or organization who possesses, harbors, keeps, or has an interest in, or who has control or custody of an animal..."[68]

¶24    In their Motion, Defendants' argue that "there is no genuine issue of material fact in dispute that… Misak was not Rocky's owner, and he is therefore entitled to judgment as a matter of law."[69] In support of this claim, Defendants argue that Misak did not keep the dog in such a manner that would deem him liable for Allahar's damages because the dog was given "free rein" to roam the property.[70]

¶25    In opposition, Allahar argues that both Defendants, Misak and 2DD, are Rocky's "owner" pursuant to the dog bite statute. Allahar claims that "the evidence shows that Defendant Misak was also Rocky's owner, because he was Rocky's keeper and caretaker when Angilica Lee, Rocky's de facto owner, traveled and when she was at work, which was between 7 am to 7 pm everyday."[71] Allahar further argues that "[a]s Rocky's keeper most of the day, Misak was responsible for feeding Rocky and Rocky slept close to Misak."[72] He also claims that "Misak had control and custody over Rocky as evidenced by the fact that Rocky would immediately obey Misak's commands," and that after the incident, "Misak secured Rocky on the back deck of the house so that he could help Plaintiff tend to his bleeding ankle wound."[73]

¶26    Here, Allahar is not seeking to impose liability on Misak based on his status as the Property caretaker, but rather based on the fact that he "allowed a dog to habitually remain on or about the

---

[67] 19 V.I.C. § 2602(2)

[68] 19 V.I.C. § 2602(12)

[69] Defs.' Mot. for Summ. J. at 8

[70] Defs.' Mot. for Summ. J. at 10 (*quoting* Ex. C 2DD Dep. Tr. 36:4-15).

[71] Pl.'s Opp. to Mot. for Summ. J. at 8

[72] Pl.'s Opp. to Mot. for Summ. J. at 8

[73] Pl.'s Opp. to Mot. for Summ. J. at 8

property in question."[74] Defendants' admit that 2DD is "an organization who harbors an animal" because 2DD "knew that Rocky was residing at the property on the date of Plaintiff's incident on March 7, 2018," and that "[i]t also knew that Rocky was at the property with Ms. Lee, who had been invited to stay at the residence after her house was destroyed during Hurricanes Irma and Maria."[75] However, Defendants do not sufficiently distinguish Misak's relationship with Rocky from 2DD. The Court finds that Misak would also be considered a legal owner of the dog for purposes of Section 2602. The evidence shows that Misak knew that Lee owned Rocky and kept Rocky within the confines of the property as a resident of 2DD, that he knew that Rocky was habitually on the property for a least one year prior to the bite, and that he allowed the dog to remain on the property. Additionally, he would provide the dog with food and water when asked.[76] Similar to the *Hawkins* case, the Court finds that Misak, as the Property's caretaker, allowed Rocky, a domestic animal, to habitually remain on 2DD's Property while he was an inhabitant.

### b. The Court finds that there is a genuine issue of any material fact as to whether Allahar was lawfully on the Property.

¶27    The Court finds that whether Allahar was legally on 2DD's Property when the incident in question occurred is a dispute of fact that should be left for a jury to decide. Allahar argues that he was legally on 2DD's Property; whereas the Defendants contend that Allahar "was not lawfully at the property; there was no invitation, express or implied, to him at the time he 'opened the unlocked gate and came into the property.'"[77]

¶28    Virgin Islands Code Title 19, Section 2612 states that "[a] person is lawfully upon private property of such owner within the meaning of this section when he is on such property in the performance of any duty imposed by the laws of the Virgin Islands…or when he is on such property upon invitation, expressed or implied…"[78]

¶29    In support of their argument, Defendants claim that Allahar "did not call Defendant Misak before he arrived on St. Thomas, and he had not given Defendant Misak an appointment."[79] They assert that in past dealings with Allahar concerning servicing the gate, "Misak knew to expect him[,]"[80] but on March 7th, "Misak had not been expecting him."[81] Accordingly, they argue that Allahar was not lawfully on 2DD's Property.

¶30    Defendants also set forth that Misak's behavior once Allahar arrived on the Property exemplifies that his presence was unlawful. Defendants argue that although Allahar telephoned Misak and "called out to Defendant Misak once he arrived at the property," Misak never

---

[74] *Hawkins v. Greiner*, 66 V.I. 112, 120
[75] Defs.' Mot. for Summ. J. at 12
[76] Ex. 2 at 43
[77] Defs.' Mot. for Summ. J. at 12 (*quoting* Ex. A Allahar Dep. Tr. At Ex. 3).
[78] 19 V.I.C. § 2612
[79] Defs.' Mot. for Summ. J. at 12
[80] Defs.' Mot. for Summ. J. at 12 -13
[81] Defs.' Mot. for Summ. J. at 14

*Lincoln Allahar v. 2DD Bjerge Gade, LLC, et al.*
Case No. ST-2018-CV-00241
**Memorandum Opinion and Order**
**Page 10 of 11**

2022 VI Super 18U

responded, nor did Allahar "see Misak before he entered the property."[82] Further, Misak yelled "'Get out!' while waving his hand like he was shooting away a bug" to stop Allahar from coming onto the Property.[83]

¶31    In contrast, Allahar argues that the evidence supports a finding that "Mr. Allahar was legally on the property because he had an express invitation to visit the property to fix the magnetic lock on the gate, making him a business invitee." In support of this argument, Allahar claims that "[o]n March 5, 2018, Defendant 2DD's caretaker, Misak, … had called and requested that Mr. Allahar come to the property to service the magnetic lock."[84] Further, "Allahar called Misak's cell and left a message saying he was coming up to the residence as he had finished his first appointment…[t]herefore, when Mr. Allahar arrived at the property on March 7, 2018, to service the lock, he had an express invitation to be on the property and was legally there."[85]

¶32    Additionally, the parties dispute whether Allahar had an implied invitation to enter the Property. Defendants argue that Allahar did not have an implied invitation to enter the Property "[b]ecause Plaintiff called out to Defendant Misak before pushing open the gate and he had no tools to do the work, there was no implied invitation for him to enter the property to do any work."[86] They claim that Allahar had no communication with Misak until after he entered the Property and "appeared to have used his knowledge of the security system since he installed it and that the magnetic lock was inoperable…when he pushed the gate open."[87] Whereas, Allahar sets forth that "even if he did not have an express invitation to visit the property (which he did), he undisputedly had an implied invitation to be there."[88] Allahar claims that because the timing of when he would arrive on March 7, 2018, to service the lock on the gate was not clearly or directly expressed, his invitation to be on the Property could be considered implied: Allahar had serviced the security gate in the past, and 2DD called and requested maintenance. Regardless of not scheduling an exact time for Allahar to arrive on the Property, he argues that his presence was lawful.

¶33    Lastly, in his Opposition, Plaintiff alleges a claim of negligence based on a theory of premise liability.[89] The Opposition sets forth that it was "foreseeable that the dog, Rocky, would attack and bite Mr. Allahar when he came to the Property to fix the magnetic lock on the property's gate as requested."[90] In the context of a negligence claim, "[t]raditionally the duty of care owed by a land possessor to an entrant on the land was determined by classifying the entrant as either an invitee, a licensee, or a trespasser."[91] Consequently, courts normally determine "an entrant's status as a matter of law to define the duty she was owed at the time of her injury," rather than holding

---

[82] Defs.' Mot. for Summ. J. at 14
[83] Defs.' Mot. for Summ. J. at 15
[84] Pl.'s Opp. to Mot. for Summ. J. at 12
[85] Pl.'s Opp. to Mot. for Summ. J. at 12
[86] Defs.' Mot. for Summ. J. at 17
[87] Defs.' Mot. for Summ. J. at 16
[88] Pl.'s Opp. to Mot. for Summ. J. at 13
[89] Pl.'s Opp. to Mot. for Summ. J. at 15
[90] Pl.'s Opp. to Mot. for Summ. J. at 1
[91] *Machado v. Yacht Haven U.S.V.I., LLC,* 61 V.I. 373, 381 (2014) (*referencing Ford v. Bd. of Cnty. Commis of Cnty. of Dona Ana,* 879 P.2d 766, 769 (N.M. 1994)).

*Lincoln Allahar v. 2DD Bjerge Gade, LLC, et al.*
Case No. ST-2018-CV-00241
**Memorandum Opinion and Order**
**Page 11 of 11**

2022 VI Super 18U

all land possessors to a general duty of reasonable care.[92] However, the initiating Complaint in this case does not put the Defendants on notice of a negligence claim in accordance to Virgin Islands Rules of Procedure 8. Therefore, the Court will review whether Allahar was lawfully on 2DD's Property in the context of Virgin Islands Code Title 19, Section 2612, rather than under a claim for negligence.

## V. CONCLUSION

¶34    The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of any material fact and that it is entitled to judgment as a matter of law.[93] In this case, 2DD and Misak failed to sufficiently demonstrate that there are no genuine issues of any material fact that they are not owners as defined by Sections 2602(2) and 2602(12) of Title 19 of the Virgin Islands Code. The Defendants also failed to meet their burden of demonstrating that there are no genuine issues of any material fact that Allahar was not legally on 2DD's Property when he was bitten by the dog.

Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment and Memorandum of Law, filed on August 30, 2021, is **DENIED**; and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

DATED: 2/10/2022

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____ 02/11/22
for **LATOYA CAMACHO**
Court Clerk Supervisor ____/____/____

---

[92] *Id.*
[93] *Id.*